IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Builders Mutual Insurance Company, | ) | C.A. No. 0:11-cv-550-CMC |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| v. | ) | ON MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| OakTree Homes, Inc., Frank A. DiPiero, | ) | |
| Darien B. DiPiero, Dawne M. Ras, and | ) | |
| Tom Ras, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Through this declaratory judgment action, Plaintiff, Builders Mutual Insurance Company ("Builders Mutual"), seeks a determination of the extent of its liability for damages which were awarded against its insureds, OakTree Homes, Inc, Dawne M. Ras, and Tom Ras (collectively "OakTree Defendants"). The underlying lawsuit ("State Action") was filed by Frank A. DiPiero and Darien B. DiPiero (collectively "the DiPieros") seeking recovery for defects in the construction of their home. Dkt. No. 41-2 (State Action complaint). Liability in the State Action was established on motion for summary judgment. Dkt. No. 41-3 (State Action summary judgment order and "judgment"). Actual damages of $123,542.25 and punitive damages of $300,000 were awarded in a subsequent non-jury hearing. Dkt. No. 41-4 (State Action order on damages and judgment).

The matter is before the court on Builders Mutual's motion for summary judgment as to the extent of its duty of indemnification under a Commercial General Liability policy ("CGL policy") which provided coverage to the OakTree Defendants.[1] Builders Mutual argues that it has no obligation to indemnify the OakTree Defendants for the damages awarded in the State Action for

_____

[1] The OakTree Defendants are in default. Dkt. Nos. 27, 28. The motion is, therefore, directed to the DiPieros' derivative rights, if any, to receive the benefit of the policy's indemnification provisions.

a variety of reasons including, *inter alia*, that: (1) some of the damages awarded were for injuries which fall outside the scope of coverage of the CGL policy because they were not awarded for "property damage" caused by an "occurrence"; (2) all of the damage to the DiPieros' home is excluded under the policy's Your-Work exclusion; and (3) the policy excludes coverage of punitive damages awards.   For the reasons set forth below, Builders Mutual's motion is granted in full.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Rule 56(c)(1) provides as follows:

(1)     A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A)     citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

---

[2]  In its opening memorandum, Builders Mutual also argued that coverage was excluded because the OakTree Defendants did not promptly advise Builders Mutual of the State Action and went into default. Dkt. No. 41 at 15-16.  Builders Mutual abandoned this argument on reply.  It is not, therefore, considered here.

or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or

(b)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## BACKGROUND

### I.    State Action

**Complaint.** The State Action complaint asserted two causes of action against the OakTree Defendants: (1) breach of contract/warranty for defective construction (Dkt. No. 41-2 ¶¶ 8-21); and (2) fraud for false assurances that a home warranty would be provided through a third-party warranty company and that repairs would be made (Dkt. No. 41-2 ¶¶ 22-27). The first cause of action rested on allegations of defects in the "front steps, front walkway, driveway and a cement patio at the rear of the house." *Id.* ¶ 12. The DiPieros alleged that "[t]he stone and concrete in these areas began separating and cracking significantly" not long after their purchase and that the defects continued to worsen thereafter. *Id.* These defects were not corrected despite the DiPieros' prompt reports to the OakTree Defendants who agreed to make repairs. *Id.* ¶¶ 13-17. The DiPieros concluded their breach of contract/warranty claim with the following allegations and demands:

18.    Based upon quotes provided by subcontractors, the cost to repair the existing defects will be in excess of $30,000.

19.     [The OakTree] Defendants have breached the Contract and the Home Buyers Warranty by building the [DiPieros'] home in a defective manner and failing to perform necessary repairs to remedy these substantial defects.

20.     [The OakTree] Defendants' actions constitute reckless, wanton and/or willful construction deficiencies.

21.     [The DiPieros] are entitled to recover damages, including punitive damages and attorneys' fees and costs for [the OakTree] Defendants' conduct.

Dkt. No. 41-2 ¶¶ 18-21.

The fraud claim rested primarily on allegations the OakTree Defendants induced the DiPieros to execute the construction contract by offering a Home Buyers Warranty to be set up through a third-party warranty company but failed to procure such a warranty. *Id.* ¶¶ 23-26. The DiPieros also alleged that the OakTree Defendants misrepresented their intent to make repairs to the home. *Id.* ¶ 27. The DiPieros alleged that they were injured by these misrepresentations "because substantial defects on the [sic] their home have never been repaired and continue to worsen[.]" *Id.* ¶ 28.

In their "Request for Relief" as to all causes of action, the DiPieros sought actual and compensatory damages, punitive damages, and attorneys' fees and costs. They also included a demand for a jury trial.

**Summary Judgment.** The DiPieros were granted summary judgment as to liability in the State Action by order entered January 20, 2010. Dkt. No. 41-3 (state court order). The one-page order granting summary judgment notes that no one appeared for the OakTree Defendants. While the summary judgment order referred to the "record presented," the order does not include any discussion of the record evidence. Neither has any party provided the court with the underlying summary judgment motion or record. The parties have, however, presented various documents

4

which, presumably, were provided to the state court at some point in the proceedings.  *See infra*
Evidence in State Action.

**Damages Hearing.**  A non-jury hearing as to damages was held on June 30, 2010.  That
hearing resulted in a three-page written order which included findings of fact and conclusions of
law.  The order reads, in relevant part, as follows:

> This case involves an action for breach of contract and fraud arising out of
> defects in the construction of [the DiPieros'] primary residence in York, South
> Carolina. . . . On June 30, 2010, this Court held a hearing on [the DiPieros'] claimed
> damages in this matter.  The Court received testimony and evidence from Plaintiff
> Frank A. DiPiero regarding Plaintiffs' damages.  Plaintiffs presented evidence that
> the cost to correct the construction defects caused by [the OakTree] Defendants
> would be $122,492.25.  In addition, Plaintiffs incurred the expense of having
> engineers examine their home to assess the extent of the damage and the cost of
> repair.  The Court finds that Plaintiffs' actual damages for breach of contract and
> fraud is $123,542.25.

Dkt. No. 41-4 at 4-5.  Immediately after this discussion, the order addresses the DiPieros' claim for
punitive damages and finds they are "entitled to punitive damages in the amount of $300,000.00."
*Id.* at 5.

The order then proceeds to find that the OakTree "Defendants intentionally misrepresented
the existence of a home warranty to" the DiPieros.  This finding is based on evidence of assurances
made  prior to execution of the construction contract and subsequent representations described as
follows:

> After executing the construction contract, and after [the OakTree] Defendants started
> construction on the home, Mr. DiPiero asked [the OakTree] Defendants whether they
> had taken care of setting up the home warranty with a third-party vendor. [The
> OakTree] Defendants told Mr. DiPiero that they had in fact provided [the DiPieros]
> with materials purporting to relate to the warranty.

Dkt. No. 41-4 at 5-6.  The order then notes that, when the DiPieros later sought to make a claim after
discovering various defects, the home warranty company informed them that the home had not

5

"been registered for coverage." *Id.* at 6. The order also notes that the OakTree Defendants had "admitted in writing that they were responsible for the defects but had no funds to make the repairs." *Id.*[3]

**Evidence in State Action.** As noted above, no party has provided the court with any documents purporting to represent the record on which the state court based its *summary judgment* decision. Neither is there any transcript or other representation of what was presented in the *damages hearing*. Builders Mutual has, however, submitted an affidavit signed by Mr. DiPiero, which was apparently filed in the state court after the summary judgment decision and before the damages hearing. Dkt. No. 41-6 ("DiPiero Affidavit").[4] As there is no evidence to the contrary, the court accepts that the evidence presented at the damages hearing is consistent with that expressed in the DiPiero Affidavit and its various attachments which are discussed below.[5]

The DiPiero Affidavit refers to various attachments including three reports of Verna Engineering, P.C. ("Verna"), an entity the DiPieros hired to determine the cause and cure for the construction defects, *id.* ¶¶ 8-12, 16, 17 (referring to exhibits A-C), a proposal from a related entity to "repair the defects" for $122,492.25, *id.* ¶ 18 (referring to exhibit E), and a letter from the

---

[3] In addressing Builders Mutual's motion, this court considers the state court decision only for purposes of discerning the findings of fact and legal theories on which the state court relied.

[4] The DiPiero Affidavit is dated April 16, 2010, includes the caption in the State Action, and was stamped as filed in the state court on May 28, 2010, roughly one month before the damages hearing. Dkt. No. 41-6.

[5] The DiPieros also submitted a declaration by Mr. DiPiero in opposition to Builders Mutual's motion for summary judgment. Dkt. No. 47-1 ("DiPiero Declaration" dated March 12, 2012). Although it adds some additional information, this recently created document largely repeats and is entirely consistent with the DiPiero Affidavit filed in the State Action. *See infra* at "Evidence Produced in This Action" (discussing DiPiero Declaration).

6

OakTree Defendants in which these Defendants indicated they did not have funds to perform the repairs, *id.* ¶ 14 (referring to exhibit C).[6]

**Evidence Produced in this Action.**    The evidence referenced above was, apparently, produced in discovery in this action.  *See* Dkt. No. 41-14 Resp. No. 2, 5, 7-11 (DiPieros' interrogatory responses referring to documents which would be produced).  In addition, the DiPieros rely on a new declaration signed by Mr. DiPiero ("DiPiero Declaration").  Dkt. No. 47-1 at 2-5. This Declaration, dated March 12, 2012, repeats the averments in DiPiero's earlier affidavit with minor, non-substantive edits, adds one paragraph relating to an event which necessarily predated the State Action (¶ 7), and adds three paragraphs relating either to the State Action proceedings or subsequent events (¶¶ 19-21).

Nothing in any of the changes is inconsistent with the earlier DiPiero Affidavit or the state court's damages order.  For example, the new paragraph relating to pre-State Action events states as follows: "Additionally, based on comments made by Tom and Dawne Ras, I assumed that OakTree was adequately insured (apart from the third-party warranty) to address any problems encountered during or after construction."    Dkt. No. 47-1 ¶ 7.  This statement, at most, provides further support for the fraud claim in the State Action.

The three other added paragraphs include one stating Mr. DiPiero's understanding of what communications have occurred between his counsel and Builders' Mutual (necessarily hearsay) and

---

[6]  Documents corresponding to most of these exhibits were filed in this action and appear to be those referenced in the affidavit.  *See* Dkt. No. 41-7 (February 13, 2008 Verna letter/report with "Exhibit A" notation); Dkt. No. 41-8 (April 4, 2008 Verna letter/ report with no exhibit notation); Dkt. No. 41-9 (August 5, 2009 Verna letter/report with "Exhibit B" notation); Dkt. No. 41-10 (March 17, 2010 Verna letter/report with "Exhibit D" notation); Dkt. No. 41-11 (March 24, 2010 Panther Construction proposal with no exhibit notation).

one stating that he was not aware of the identity of OakTree's insurer when the State Action was filed and does not believe he or his wife "have ever made any sort of monetary demand against Builders Mutual." *Id.* ¶¶ 20, 21. The third paragraph states that the DiPieros "retained Adler Construction Company to make repairs to the front steps, front walkway, driveway and rear patio" and that these "repairs have proceeded in stages, with a small number of items remaining to be repaired." *Id.* ¶ 19. Mr. DiPiero then states: "Adler Construction has verified to me that the quality of the soil and soil compaction, among other deficiencies, led to the rotational action of the front staircase and the settling and cracking of the other exterior surfaces described above, all as earlier reported by Verna." *Id.*[7] Thus, while the DiPiero Declaration adds *more* support for the DiPieros' position as taken in the State Action, nothing in it or any other evidence proffered in this action, suggests any *different* basis for the state court's award of damages against the OakTree Defendants.

**DiPiero Characterization of Evidence.** The DiPieros' memorandum in opposition to summary judgment presents a consistent picture of the nature and cause of their damage. For example, the opposition memorandum focuses on the listed construction defects, the OakTree Defendants' failure to correct those defects, and the OakTree Defendants' misrepresentations relating to the home warranty and their intent to make repairs. *See generally* Dkt. No. 47 at 2 (noting construction defects including that "the outdoor front staircase was sinking into the ground and pulling away from the house," "[t]he cement walkway at the front of the house was also sinking into the earth and pulling away from the house," "[t]here were severe cracks in the driveway," and "many problems at the rear of the house involving the cement patio"); *id.* at 2 (noting the OakTree

---

[7] This paragraph states that Adler was hired "[i]n or about April 2012[.]" Given that the Declaration is dated March 12, 2012, and reports that the "repairs have proceeded in stages" and are now largely complete, the court assumes that the reference to April 2012 is incorrect.

Defendants "acknowledged the existence of these problems and always admitted it was OakTree's responsibility [but] never did anything to help [the DiPieros] or repair the defects."); *id*. at 3 (noting Verna, which the DiPieros hired at their own expense, "concluded generally that soil quality and lack of soil compaction caused" the problems at the front of the house while problems at the rear were "caused by an insufficient number and improper cutting of stress joints."); *id.* at 4 (noting the DiPieros contacted the third-party warranty company after "it was clear that OakTree would not live up to its obligations" and "were shocked to discovery that OakTree's owners had never set up a home warranty even though . . . materials at closing suggested otherwise.").

**Policy provisions.** Builders Mutual insured the OakTree Defendants during the relevant period through a CGL policy which contained the following relevant provisions:

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period . . . .

* * *

2. Exclusions

   This insurance does not apply to:

* * *

9

l.      Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor. [This paragraph was removed by endorsement 2294, quoted below]

* * *

SECTION V – DEFINITIONS

* * *

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

17.    "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it . . . .

* * *

22.    "Your work":

a.  Means:

(1)  Work or operations performed by you or on your behalf; and

(2)  Materials, parts or equipment furnished in connection with such work or operations.

An endorsement (#CG 2294 (10/01)) modifies exclusion l. by replacing it with the following language:

EXCLUSION – DAMAGE TO WORK PERFORMED BY
SUBCONTRACTORS ON YOUR BEHALF

2.  Exclusions

This insurance does not apply to:

10

l.    Damage to Your Work

"Property damage to "your work" arising out of it or any part of it and included in the "products-completed operations hazard.""

Dkt. No. 41-12 at 15.

A separate policy endorsement excludes coverage of punitive or exemplary damages:

PUNITIVE DAMAGES EXCLUSION

This insurance excludes any claim for punitive or exemplary damages whether arising out of the acts of the insured, insured's employees or any other person.

Dkt. No. 41-12 at 14.

**DISCUSSION**

**I.    Ripeness**

As a threshold matter, the court addresses the issue of ripeness. The DiPieros argue that Builders Mutual's motion for summary judgment is premature because of Builders Mutual's misrepresentation of certain proceedings in the State Action and because the DiPieros have not yet completed the repairs to their home, leaving the total cost of repairs uncertain. *See* Dkt. No. 47 at 11 (distinguishing a case which applied the Your-Work exclusion and arguing that summary judgment is premature because "repair of the defects . . is ongoing" leaving "disputed issues of material fact related to this exclusion"); *id.* at 12 (arguing that the DiPieros "have never specifically asserted the nature of the claims as it relates to Plaintiff Builders Mutual, and it is fundamentally unfair for the insurer to force the homeowner Defendants into a declaratory judgment action where these issues are still being investigated and the home is still being repaired").

The DiPieros' first ripeness argument relates to Builders Mutual's argument that the OakTree Defendants failed to satisfy a condition precedent to indemnification because they allowed the matter to go into default and failed to give Builders Mutual timely notice of the State Action.

11

Builders Mutual abandoned this argument in its reply, rendering any dispute as to when it received notice of the State Action (or what notice it received) irrelevant.[8]

The DiPieros' second argument misapprehends the nature of this action which is an action to determine the extent of a liability insurer's (Builders Mutual's) obligation to indemnify its insureds (the OakTree Defendants) for the insureds' liability to the DiPieros. The extent of the OakTree Defendants' liability was established by the judgment in the State Action. It follows that Builders Mutual's potential obligation for indemnification is capped by that judgment. *See* Policy § I.A.1.a. (Coverage Provision stating "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."). Moreover, the facts relevant to determination of Builders Mutual's duty of indemnification are those determined by the fact finder in the underlying State Action. *See infra* Discussion § III "Duty of Indemnification." Those facts have already been determined by the state court's decision.

The DiPieros not only had a full opportunity to litigate their claims in the State Action, but were wholly successful, receiving relief on both legal theories and actual damages in the maximum amount suggested by their evidentiary submissions (and roughly four times the amount suggested by the complaint). They also had every opportunity to elect the theories on which to proceed and evidence to present in state court. That the OakTree Defendants' insurer might ultimately provide

---

[8] Builders Mutual's initial memorandum indicated that it first learned of the matter after a "default judgment" was entered. In fact, it appears to have learned of the matter after summary judgment was entered but prior to the damages hearing, although it may have been misinformed as to the nature of the original "judgment."

funds to satisfy all or part of the state court judgment does not open the door to proof of new or greater damages or to modification of the theories on which relief was obtained.[9]

## III. Policy Coverage

**Construction of Insurance Policies**.  Under South Carolina law, insurance policies are interpreted according to the same rules of construction applicable to other types of contracts.  *Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc.*, 588 S.E.2d 112, 115 (S.C. 2003) ("*Brazell*").  Thus, the court "must give policy language its plain, ordinary and popular meaning. . . . When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used."  *Id.*; *see also B.L.G. Enterprises, Inc. v. First Fin. Ins. Co.*, 491 S.E.2d 695, 697 (S.C. Ct. App. 1997) ("The construction of a clear and unambiguous contract is a question of law for the court." ), *aff'd*, 514 S.E.2d 327 (S.C. 1999).  The court's "duty is limited to the interpretation of the contract made by the parties, regardless of its wisdom or folly, apparent unreasonableness, or failure [of the parties] to guard their interests carefully."  *B.L.G. Enterprise*s, 514 S.E.2d at 330 (internal quotation marks omitted).

Exclusions in insurance policies are generally narrowly construed in favor of coverage.  However, "[c]ourts may not torture the ordinary meaning of language to extend coverage expressly excluded by the terms of the policy."  *S.C. Mun. Ins. & Risk Fund v. City of Myrtle Beach*, 628

---

[9] The DiPieros are mistaken in any belief that they might bring a "bad faith" claim against Builders Mutual for its arguments on summary judgment or for any other action related to its failure to indemnify the OakTree Defendants.  *See* Dkt. No. 47 at 5-6 (suggesting that Builders Mutual's arguments regarding the state record "raises issues relating to [Builders Mutual's] potential bad faith conduct in failing to pay a claim it had notice of at least as early as January of 2010).  The DiPieros are not first-party insureds and, consequently, have no right to pursue a claim for bad faith failure to pay first party benefits.  *See Kleckley v. Northwestern Nat'l Cas. Co.*, 526 S.E.2d 218 (S.C. 2000) ("A tort action for an insurer's bad faith refusal to pay benefits does not extend to third parties who are not named insureds.").

S.E.2d 276, 278 (S.C. Ct. App. 2006). Moreover, "insurers have a right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." *S.C. Farm Bureau Mut. Ins. Co. v. Dawsey*, 638 S.E.2d 103, 104-05 (S.C. Ct. App. 2006).

**Duty of Indemnification**. Under South Carolina law, a liability insurer's duty to indemnify is determined by the findings of the fact finder in the underlying case. *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388-89 (4th Cir. 2001) (citing *Jourdan v. Boggs/Vaughn Contracting, Inc.*, 476 S.E.2d 708, 711 (S.C. Ct. App. 1996)). Here, the record from the State Action is fairly limited. It is, nonetheless, adequate to establish the nature of the claims, the scope of the allegations, the basis for imposing liability, and the amount of damages.

**Scope of Coverage.** Builders Mutual's policy requires it to indemnify its insureds, the OakTree Defendants, for damages the insureds are legally obligated to pay because of "'property damage' . . . caused by an 'occurrence' . . . [which] occurs during the policy period[.]" Policy § I.A.1.a.b. "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property." *Id.* § V.17. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." " *Id.* § V.13. Property damage caused by an occurrence is covered unless it is subject to one or more exclusions.

### A.    Punitive Damages

The policy includes an endorsement which clearly and unambiguously excludes coverage of punitive or exemplary damages. Builders Mutual is not, therefore, obligated to indemnify its insured for the award of punitive damages in the State Action.

14

**B.      Pure Economic Losses Not Covered.**

The judgment in the State Action awarded a single amount of actual damages for two distinct causes of action, breach of contract/warranty and fraud.  As explained below, at least some of the damages awarded are for purely economic injury, that is, economic injury that does not flow from "property damage."  It follows that damages awarded for such injuries fall outside the scope of coverage.

**Damages Awarded for Fraud.**  The fraud claim was founded on allegations and evidence that the OakTree Defendants made false representations regarding procurement of a homeowners warranty and their own intent to make repairs.  While the DiPieros may have suffered economic harm as a result of these alleged false representations, they did not suffer any "bodily injury" or "property damage" which is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property" as a result of the misrepresentation(s).  Policy § V. 17.  Thus, the award of actual damages is not covered to the extent awarded under the fraud claim.

**Damages Awarded for Breach of Contract/Warranty.**  Damages awarded for breach of contract or breach of warranty also generally fall outside the scope of coverage under a CGL policy. *See Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 459 S.E.2d 318, 320 (S. C. Ct. App. 1994) ("A general liability policy is intended to provide coverage for tort liability for physical damage to the property of others; it is not intended to provide coverage for the insured's contractual liability which causes economic losses.").   This is because product defects which injure only the product itself do not constitute "property damage" caused by an occurrence. *See Crossmann Communities of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589, 593 (S.C. 2011).

In *Crossman*, the court noted continued adherence to the *result* in two earlier cases which relied on interpretation of the term "occurrence" to hold that the costs of replacing defective work did not fall within the scope of coverage under a CGL policy. *Crossman*, 717 S.E.2d at 593 (distinguishing claims for defective work, which fall outside scope of coverage, from claims for damage to other property caused by the defective work, which fell within the scope of coverage). The earlier cases included *L-J, Inc. v. Bituminous Fire and Marine Ins. Co.*, 621 S.E.2d 33, 36 (S.C. 2005), in which the court held that premature deterioration of roads which resulted from the insured contractor's faulty workmanship was not covered because it was not the result of an "occurrence." As explained in *L-J*, which adopted the majority rule that defective workmanship which damages only the product itself is not an occurrence, if the court "were to hold otherwise, the CGL policy would be more like a performance bond, which guarantees the work, rather than like an insurance policy, which is intended to insure against accidents." *Id.* at 36.[10]

The rule adopted in *L-J* was applied to a case involving defective construction of homes in *Auto-Owners Ins. Co., Inc. v. Newman*, 684 S.E.2d 541 (S.C. 2009) ("*Newman*"). In *Newman*, the court was faced with claims for defective application of stucco by a subcontractor and related damages to the home's framing and exterior sheathing. The court held that the "negligent application of the stucco [did] not on its own constitute an 'occurrence[.]'" *Id.* at 544. By contrast,

---

[10] *See L-J*, 621 S.E.2d at 35 (noting that "[a] majority of other jurisdictions deciding this issue have held that faulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy."); *id.* at 36 (noting that, "[a]lthough the alligator cracking [of the roadway] may have constituted property damage, we find that an 'occurrence,' as defined under the CGL policy, did not take place."); *id.* (finding the alleged "negligent acts constitute[d] faulty workmanship, which damaged the roadway system only. And because faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions, we hold that the damage in this case did not constitute an occurrence.").

"the continuous moisture intrusion resulting from the [negligent application of the stucco was] an occurrence" because it was an unexpected and unintended "'accident' – involving 'continuous or repeated exposure to substantially the same harmful conditions.'" *Id.* at 545. Because the policy included a subcontractor exception from the Your-Work exclusion and because the framing and sheathing were not part of the subcontractor's stucco work, these combined rulings resulted in coverage of the damage to the framing and exterior sheathing, but not coverage of the defective stucco work itself. *See id.* at 545-46 (also holding replacement of the stucco could not be covered as "an incidental cost to repairing the damage to other property).[11]

The analysis in *Crossman* differed from that in *Newman* and *L-J* because it focused on whether there was "property damage" rather than whether there was an "occurrence." *Id.* As the court explained:

> With respect to the first quoted definition of "property damage," the critical phrase is "physical injury," which suggests the property was not defective at the outset, but rather was initially proper and injured thereafter. We emphasize the "difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for property damage.'" [citing cases from multiple jurisdictions]
>
> * * *
>
> Returning to *Newman* and viewing those facts through the lens of both "property damage" and "occurrence," we clarify that the cost to replace the negligently constructed stucco did not constitute "property damage" under the terms of the policy. The stucco was not "injured." However, the damage to the remainder of the project caused by water penetration due to the negligently installed stucco did constitute "property damage."

---

[11] The policy issued to the OakTree Defendants has a similar Your-Work exclusion in the body of the policy, but that language is superceded by an endorsement which removes the subcontractor exception. This leads to a different ultimate result. *See infra* Discussion § III.C.

\* \* \*

   In sum, we clarify that negligent or defective construction resulting in damage to otherwise non-defective components may constitute "property damage," but the defective construction would not.

*Id.* at 593-94.

   To the extent damages in the State Action were awarded for cracks in the patio behind the DiPieros' home, *Crossman* precludes coverage.[12]  This is because the position the DiPieros successfully advanced in state court was that the cracks resulted from defects in the patio itself.  *See, e.g.,* Verna Report dated February 13, 2008 (attributing cracks in rear patio to inadequate control joints); *see also* Frank DiPiero March 12, 2012 Declaration ¶ 14 (stating in declaration *prepared for this action* that "Verna determined that the excessive cracking on the back patio was caused by an insufficient number and improper cutting of stress joints").[13]

---

  [12] Builders Mutual does not seek to exclude any other damages under this argument.  *See* Dkt. No. 41-1 at 12 (arguing in opening memorandum that damages awarded for repair of the back patio are excluded under *Crossman*); Dkt. No. 48 at 2-3 (noting in reply that *Crossman* argument is limited to back patio).

  [13] In their responsive memorandum, the DiPieros suggest that the patio cracks were caused by the combination of inadequate joints and poor soil compaction, which might take them outside the rule in *Crossman*.  Dkt. No. 47 at 10 ("The application of stress joints in the back patio were simply inadequate to absorb the substantial movement of the concrete caused by the soil issues."). Even if this is true (and no supporting evidence is cited), it is not relevant here as there is no indication this argument was made to or relied on by the state court.

18

### C.     Your-Work Exclusion

In contrast to the back patio, there is uncontroverted evidence that the numerous problems at the front of the DiPieros' home were the result of excessive settlement due to inadequate compaction of the soil. *See* Verna Report dated February 13, 2008 at 2; Verna Report dated August 5, 2009 at 1-5; Verna Report dated March 17, 2010.  The consistency of the allegations in the State Action with the evidence available there and presented here requires the conclusion that the DiPieros succeeded in state court based on this theory of causation.  The areas with problems which resulted from excessive settlement include the outside front staircase, walkway, driveway and retaining wall.  Because the damage to these areas was caused by an external force (excessive settlement caused by defective soil and inadequate soil compaction), it falls within the coverage provision. *See supra* Discussion § III.B. (discussing *Crossman*).  However, for reasons explained below, coverage for this type of damage is excluded under the Your-Work exclusion as set out in the policy endorsement.

The main policy document included a Your-Work exclusion which limited application of the exclusion with respect to work performed by subcontractors.  That limitation was removed by an endorsement which excluded coverage for "[p]roperty damage to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" The policy defines "your work" to mean "[w]ork or operations performed by you or on your behalf" as well as "[m]aterials, parts or equipment furnished in connection with such work or operations."  Policy § V. 21.

The Fourth Circuit recently addressed the impact of a similarly worded if not identical endorsement in *Jessco, Inc. v. Builders Mutual Ins. Co.*, Slip Op. No. 10-1215 (March 29, 2012), explaining as follows:

> The primary purpose of [the Your-Work] exclusion is to prevent liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business. . . . [T]he exclusion does not withdraw coverage for any and all work done <u>by</u> the insured or its subcontractors; it withdraws coverage in cases where the insured causes property damage <u>to</u> work done by the insured or its subcontractors[.] . . . *Accordingly, the Policy's elimination of the subcontractor's exception means that Jessco's subcontractors will not be viewed as third-parties for purposes of determining whose "work" was damaged*[.]

*Jessco*, Slip Op. at 8-9 (internal quotation marks and citations omitted) (emphasis added).

As noted above, the DiPieros were wholly successful in state court on the theory that the damages to the front area of the home were the result of improper soil or soil compaction. Necessarily, the state court accepted that the OakTree Defendants were responsible for these deficiencies, either because OakTree did the work itself or because, as prime contractor, it was responsible for the work of the subcontractor which performed the work. As the injured property (stairs, walkway, and driveway) was also part of the OakTree Defendants' work, the resulting award of damages falls clearly within the endorsement's Your-Work exclusion (which lacked a subcontractor limitation) for reasons explained in *Jessco*.[14] This same exclusion would apply to damages relating to cracks in the back patio had the state court found those damages to have been caused by inadequate soil compaction.

## CONCLUSION

For the reasons set forth above, the court finds this matter ripe for resolution and grants summary judgment to Plaintiff, Builders Mutual Insurance Company, in the form of a declaration

---

[14] The soil compaction was apparently performed by a subcontractor. The result would, therefore, be different without the endorsement which removed the subcontractor limitation.

that it has no duty of indemnification with respect to the judgment Defendants Frank A. DiPiero and

Darien B. DiPiero obtained against Defendants OakTree Homes, Inc., Dawne M. Ras, and Tom Ras.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 9, 2012